UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

August 14, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:   *Christina W. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
       Civil No. 23-1325-CDA

Dear Counsel:

On May 18, 2023, Plaintiff Christina W. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 6) and the parties' briefs (ECFs 10, 14, 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case to the Commissioner for further consideration. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on August 2, 2016, alleging a disability onset of September 5, 2014. Tr. 235-38. Plaintiff's claims were denied initially and on reconsideration. Tr. 131-39. On August 8, 2018, an Administrative Law Judge ("ALJ") held a hearing. Tr. 62-92. Following the hearing, on May 21, 2019, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 17-42. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constituted the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a). Thus, having exhausted all administrative remedies, Plaintiff filed an action for judicial review within this Court. Tr. 1293-98. On January 25, 2022, the Court remanded the case to the Commissioner for further proceedings. Tr. 1293-98. On May 4, 2022, the Appeals Council vacated the final decision and remanded the case to an ALJ for further proceedings. Tr. 1299-1303. A second ALJ then held a hearing on December 6, 2022.

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on May 18, 2023. ECF 1. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, Commissioner O'Malley has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

Tr. 1225-1260.  On February 6, 2023, the ALJ rendered his decision denying Plaintiff's claim for DIB.  Tr. 1197-1224.  Having exhausted all administrative remedies, Plaintiff has filed this second action for review.  ECF 1.

## II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her amended alleged onset date of September 1, 2015 through her date last insured of June 30, 2017."  Tr. 1202.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "inflammatory arthritis; fibromyalgia; diabetes mellitus; thyroid disease; carpal tunnel syndrome; osteoarthritis; sleep apnea; respiratory disorder; dysfunction major joints (left shoulder); and obesity."  Tr. 1203.  The ALJ also determined that Plaintiff suffered from the non-severe impairments of "deviated septum; chronic sinusitis; hyperlipidemia; anemia; cushingoid side effect of steroids; hypertension; and bilateral myopia and astigmatism."  Tr. 1203.  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 1207.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except that she is limited to standing and walking up to four hours out of an eight-hour workday, sitting up to six hours out of an eight hour workday and is further limited to: never climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs; frequent use of either upper extremity for fine fingering or grasping/handling of small objects; occasional use of either upper extremity for overhead reaching; avoiding concentrated exposure to extreme cold, heat, or humid conditions; avoiding concentrated exposure to fumes, odors, dusts, gases, or other pulmonary irritants; and avoiding work at unprotected heights.

Tr. 1208.  The ALJ determined that Plaintiff was unable to perform past relevant work as a Dental Hygienist (DOT[3] #078-361-010) but could perform other jobs that existed in significant numbers

---

[3] The "DOT" is the Dictionary of Occupational Titles.  "The *Dictionary of Occupational Titles*,

in the national economy. Tr. 1214. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 1215.

### III. LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV. ANALYSIS

Plaintiff argues that the ALJ's "critical misunderstanding of Plaintiff's severe fibromyalgia" renders their decision "unsupported by substantial evidence." ECF 10, at 7. Plaintiff contends that she may "rely exclusively on subjective evidence" rather than objective evidence and the ALJ "impermissibly discard[ed] Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms by relying on objective evidence . . . ." ECF 10, at 14-15. Defendant counters that the "ALJ appropriately evaluated Plaintiff's subjective complaints regarding fibromyalgia when she assessed Plaintiff's RFC." ECF 14, at 6.

An ALJ may not "rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020). In *Arakas*, the ALJ "discredited [a claimant's] statements about the severity, persistence, and limiting effects" of her fibromyalgia symptoms "because [the ALJ] did not find [the symptoms] to be 'completely consistent with the objective evidence.'" *Id.* at 96. Because the claimant "was 'entitled to rely exclusively on subjective evidence to prove' that her symptoms were 'so continuous and/or so severe that [they] prevent[ed] [her] from working a full eight hour day,'" the Fourth Circuit held that the ALJ "applied an incorrect legal standard" by discrediting the claimant's complaints "based on the lack of objective

---

and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Christina W. v. O'Malley*
Civil No. 23-1325-CDA
August 14, 2024
Page 4

evidence corroborating them." *Id.* (brackets in original). The court further concluded that the ALJ "'improperly increased [the claimant's] burden of proof' by effectively requiring her subjective descriptions of her symptoms to be supported by objective medical evidence." *Id.*

Here, the ALJ determined fibromyalgia to be a medically determinable and severe impairment. Tr. 1203. The ALJ based their decision on Plaintiff "repeatedly not[ing] on examination to have between 8 and 12 (out of 18) positive fibromyalgia tender points. [Plaintiff] testified to widespread pain in her neck, shoulders, elbows, hands, knees, and ankles bilaterally over the course of years. Although [Plaintiff] is diagnosed with multiple co-occurring conditions, she was definitively diagnosed with severe fibromyalgia in April 2016." Tr. 1203 (footnotes omitted). The ALJ made only one narrative reference to fibromyalgia in their decision:

> In February 2016, the claimant established care with rheumatologist Nathan Wei, M.D., for fatigue, widespread pain, sleep disturbance, numbness in the arms, and headaches. On examination, she was noted to have positive Tina's and Phalen's signs and a positive median nerve compression test. In addition, she was repeatedly noted on examination to have between 8 and 12 (out of 18) positive fibromyalgia tender points. She was additionally diagnosed with polyarthritis and bilateral carpal tunnel syndrome. Her symptoms were partially attributed to her obesity. She was diagnosed with severe fibromyalgia in April 2016.

Tr. 1211 (footnotes omitted). The ALJ then listed restrictions for Plaintiff's medically determinable impairments ("MDIs"). For example, the ALJ determined that the "postural and environmental restrictions [] are consistent with [Plaintiff's] pain related to fibromyalgia and musculoskeletal impairments." Tr. 1213. Finally, the ALJ concluded that Plaintiff's MDIs "could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record including her self-reported activities of daily living . . . ." Tr. 1210.

Plaintiff focuses on the ALJ's explanation that "[a]though [Plaintiff] heavily focused on dropping things, the inability to button, text, type, and open jars at the hearing, testing of her grip strength was routinely 4/5," was "inconsistent with the alleged intensity and limiting effects of mild grip weakness." ECF 10, at 15 (quoting Tr. 1212). Plaintiff contends that this statement "belies the fact that the ALJ took Plaintiff's fibromyalgia seriously." Plaintiff argues that the ALJ's reliance on objective evidence when assessing credibility of the Plaintiff's subjective complaints is impermissible and necessitates remand. ECF 10, at 15.

Governed by *Arakas*, the Court agrees the ALJ's evaluation of Plaintiff's fibromyalgia warrants remand. The ALJ committed reversible error by improperly increasing Plaintiff's burden of proof by "effectively requiring" her subjective symptoms to be "supported by objective evidence." *Arakas*, 983 F.3d at 96. "[T]rigger points," which *Arakas* defines as "tenderness in specific sites on the body," are "the only 'objective' signs of fibromyalgia." *Arakas*, 983 F.3d at 97. Apart from trigger-point evidence, objective evidence has "no relevance to the severity,

persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease." *Id.* An ALJ therefore errs by discrediting a claimant's fibromyalgia symptoms based upon a lack of objective evidence to corroborate the symptoms. *See id.* at 98. If an ALJ *does* consider objective evidence in relation to fibromyalgia, that evidence "should be treated as evidence *substantiating*" a claimant's fibromyalgia symptoms. *Id.* at 97-98 (emphasis in original). Thus, the ALJ's discrediting of Plaintiff's symptoms merely by an objective grip test and the ALJ's interpretation of her daily activities, as discussed *infra*, contravenes *Arakas*. *See Arakas*, 983 F.3d at 100-01 (holding that an ALJ must explain how a claimant's "particular activities" demonstrate the capacity to "persist through an eight-hour workday."); *see also Michelle L. v. O'Malley*, No. CDA-23-1014, 2024 WL 1971784, at *3 (D. Md. May 3, 2024) ("[A]n ALJ may not dismiss subjective complaints solely because the claimant can perform the most basic of daily activities.").

Notably, the ALJ in this case found that Plaintiff had other medically determinable impairments which, unlike fibromyalgia, may produce objective evidence of their effects. *See* Tr. 1203 (determining that Plaintiff suffered from inflammatory arthritis, diabetes mellitus, thyroid disease, carpal tunnel syndrome, osteoarthritis, sleep apnea, respiratory disorder, dysfunction major joints (left shoulder), and obesity). But, when determining that objective evidence was inconsistent with Plaintiff's alleged symptoms, the ALJ drew no explicit distinction between Plaintiff's fibromyalgia-related allegations and her allegations concerning other impairments. *See* Tr. 1207-10. This lack of precision leaves the Court unable to determine whether the ALJ contravened *Arakas* in assessing Plaintiff's symptoms. Remand for a clearer analysis is therefore warranted. *See Richard B. v. Kijakazi*, No. BAH-22-3193, 2023 WL 5938763, at *3 n.5 (D. Md. Sept. 12, 2023) (remanding where the ALJ "discussed objective findings within the same paragraph referencing Plaintiff's fibromyalgia," which left the Court unable to "infer that the ALJ's discussion . . . was intended to pertain to a different impairment that does produce objective evidence").

Finally, as Plaintiff notes, the ALJ's assessment of Plaintiff's daily activities places "undue weight on [Plaintiff's] household activities in assessing" Plaintiff's determination for disability. ECF 10, at 17-18. Most of the activities described by the ALJ are basic in nature, with some requiring nothing more than a "modicum of physical exertion (i.e., driving, going out alone, doing laundry, and preparing meals)." *James L. v. Kijakazi*, No. BAH-23-1137, 2023 WL 5804621, at *4 (D. Md. Sept. 6, 2023). The Court has recognized that, absent additional explanation by an ALJ, these types of activities lack probative value in assessing a claimant's mental and physical abilities to sustain full-time work. *See, e.g.*, *Janice M. v. Kijakazi*, No. BAH-21-1715, 2022 WL 4120790, at *5 (D. Md. Sept. 9, 2022) (recognizing that paying bills does not require "more than a fleeting moment of attention" and that maintaining personal care, preparing light meals, driving, shopping in stores, utilizing a computer, and reading daily do not require "more than minimal physical exertion."). For example, the ALJ noted that Plaintiff "ha[d] no problem with her personal care" and that she "testified that she spent most of her time lying down or in a recliner [due to pain], [but] the record shows she initially reported going to baseball with her son regularly." Tr. 1211.

The ALJ selected evidence that supported their conclusion when discussing Plaintiff's daily activities. The ALJ noted that Plaintiff "testified she could barely get out of bed at times and would frequently fall due to her legs giving out, [but] the record shows that she repeatedly *stated* she was able to exercise." Tr. 1212 (emphasis added). The ALJ cited three instances in which Plaintiff "stated she was able to exercise" in Exhibit 9F. *Id.* in examining the record, this encounter is from Plaintiff's cardiovascular specialist. *See* Exh. 9F. The ALJ first cited the provider's "impression and plan" during Plaintiff's visit on March 27, 2015, when Plaintiff presented with chest pain. Tr. 607. The provider performed numerous cardiac tests—such as a stress test, echocardiogram, and electrophysiology—to rule out a cardiac event. Tr. 608. After doing so, the provider noted that "[p]atient may return to exercise program." Tr. 608. The ALJ then cited two separate cardiac-related visits, during which the medical provider noted in Plaintiff's "physical exam" that in relation to "M/S" (or musculoskeletal) portion of Plaintiff's physical exam, that Plaintiff is "able to exercise." Tr. 614, 620. These references indicate that the ALJ not only disregarded Plaintiff's subjective statements but used immaterial objective evidence to belie her claims. *See Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006) (affirming reversal of ALJ's decision where the ALJ "disregarded" a claimant's "qualification of his activity levels" because an ALJ "may not select and discuss only that evidence that favors his ultimate conclusion . . . .") (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). Because the ALJ failed to properly consider Plaintiff's subjective complaints, the ALJ's decision lacks "an accurate and logical bridge" from the evidence to the decision's conclusions. *Arakas*, 983 F.3d at 100 (citation omitted) (holding that substantial evidence did not support an ALJ's conclusion that a claimant's subjective complaints were inconsistent with her daily activities because the ALJ "selectively cited evidence concerning tasks which [the claimant] was capable of performing" and "improperly disregarded" her qualifying statements). Accordingly, the ALJ in this case fails to show how the performance of any of these activities contradicts Plaintiff's subjective complaints of pain.

In sum, remand is warranted because the ALJ's analysis with respect to Plaintiff's fibromyalgia was not "sufficiently articulated [so as] to permit meaningful judicial review." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983). Additionally, the ALJ erroneously evaluated Plaintiff's activities of daily living, thus, substantial evidence does not support the ALJ's decision. *Arakas*, 983 F.3d at 100. In remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V. **CONCLUSION**

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case. Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

*Christina W. v. O'Malley*
Civil No. 23-1325-CDA
August 14, 2024
Page 7

                                                Charles D. Austin
                                                United States Magistrate Judge